Henry G. Burnett (HB 3273)
Sarah E. O'Connell (SO 0928)
Fulbright & Jaworski L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

*Attorneys for Plaintiff AT&T Corp.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

AT&T CORP.,                                          :
                                                     :
                              *Plaintiff,*           :         07 CV 6544 (LAK)
                                                     :
          -against-                                  :         **AFFIDAVIT OF HENRY G.**
                                                     :         **BURNETT IN SUPPORT OF**
NIGERIAN TELECOMMUNICATIONS,                         :         **APPLICATION FOR**
PLC,                                                 :         **CERTIFICATE OF DEFAULT**
                                                     :
                              *Defendant.*           :
------------------------------------------------------- x

STATE OF NEW YORK     )
                      )       ss.:
COUNTY OF NEW YORK    )

    **HENRY G. BURNETT**, being duly sworn, deposes and says:

    1.    I am a member of the Bar of this Court and a member of the firm of Fulbright &
Jaworski L.L.P., attorneys for Plaintiff AT&T Corp. ("AT&T") in the above-captioned action. I
submit this affidavit in support of AT&T's request for a certificate of default by the Clerk of the
Court, pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55.1 against defendant Nigerian
Telecommunications, PLC ("NiTel"). I am familiar with all the facts and circumstances in this
action.

65120341.1

2.    On July 10, 2007 AT&T filed a complaint (the "Complaint") in the above-captioned action naming NiTel as a defendant therein. A copy of the summons and Complaint is attached hereto as Exhibit 1.

3.    On September 4, 2007 AT&T requested the appointment of APS International Ltd. as Special Process Service to effect service on NiTel according to any internationally agreed means or the laws of Nigeria, and in a manner reasonably calculated to give notice. A copy of the Order to Appoint Special Process Service dated September 10, 2007 is attached hereto as Exhibit 2.

4.    On October 2, 2007 AT&T served NiTel by delivering the summons, complaint and individual practices of Lewis A. Kaplan, U.S.D.J., and Magistrate Judge Andrew J. Peck to Abah Samuel, Secretary of Nitel at the offices of NiTel located at Plot 251, Herbert Macaulay Way, Central Business District, Abuja, Nigeria. A copy of the proof of service is attached hereto as Exhibit 3.

5.    On November 1, 207 AT&T filed the proof of service with the Court.

6.    The summons annexed to the Complaint provided NiTel with ninety (90) days from the date of service to file an answer or otherwise respond to the Complaint.

7.    The Defendant is neither an infant, nor in the military, nor an incompetent person.

8.    The time within which NiTel may answer or otherwise respond to the Complaint has expired, and NiTel has neither answered nor otherwise responded to the Complaint. NiTel has made no appearance in this action. The time for NiTel to answer or otherwise respond to the Complaint has not been extended.

65120341.1                                    -2-

9.     A proposed Certificate of Default is attached hereto as Exhibit 4.

WHEREFORE, AT&T respectfully requests that the Clerk of the Court issue a Certificate of Default against defendant NiTel.

Henry G. Burnett

Sworn to before me this
16th day of January 2008

Notary Public

SARAH E. OCONNELL
NOTARY PUBLIC, State of New York
No 02OC6138844
Qualified in New York County
Commission Expires Dec. 27, 2009

65120341.1                          -3-

# EXHIBIT 1

℁AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

AT&T CORP.

V.

NIGERIAN TELECOMMUNICATIONS, PLC

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

**'07 CIV 6544**

**JUDGE KAPLAN**

TO: (Name and address of Defendant)

Nigerian Telecommunications, PLC
Plot 251, Herbert Macaulay Way
Central Business District
ABUJA
Nigeria

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Henry G. Burnett, Esq.
Fulbright & Jaworski, LLP
666 Fifth Avenue
New York, New York 10103
Tel.: (212) 318-3000

an answer to the complaint which is served on you with this summons, within _____ ninety (90) _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK _____    DATE _____

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
             Date                       *Signature of Server*

                                _____
                                 *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Henry G. Burnett (HB 3273)
Sarah E. O'Connell (SO 0928)
Fulbright & Jaworski L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400



*Attorneys for Plaintiff AT&T Corp.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------- x

AT&T CORP.,

                         *Plaintiff,*

        -against-

NIGERIAN TELECOMMUNICATIONS,
PLC,

                        *Defendant.*

------------------------------------------------------- x

Civil Action No. _____

COMPLAINT

(Jury Trial Demanded)

       Plaintiff AT&T Corp. ("AT&T"), by and through its counsel, Fulbright & Jaworski L.L.P., alleges for its Complaint as follows:

## NATURE OF ACTION

       1.     This action for breach of contract arises out of the failure of Defendant Nigerian Telecommunications Plc, successor in interest to Nigerian Telecommunications Ltd. ("NiTel") to pay AT&T $5,047,412.25 for international telecommunications services provided to NiTel by AT&T under three separate agreements during the 2001 through 2005 time period.

       2.     NiTel has repeatedly admitted that these long overdue amounts are due and owing to AT&T, has promised to pay AT&T all such amounts, but has failed to make payment. Accordingly, AT&T brings this action for breach of contract and seeks all amounts owed by NiTel to AT&T, pre- and post-judgment interest, costs and attorneys' fees.

31259547.1

## THE PARTIES

3.      AT&T is, and at all relevant times has been, a corporation organized and existing under the laws of the State of New York, with its principal place of business at One AT&T Way, Bedminster, New Jersey 07921.  AT&T is a leading provider of telecommunications services throughout the world.

4.      NiTel is, and at all relevant times has been, a corporation organized and existing under the laws of Nigeria, with its principal place of business in Lagos, Nigeria.  NiTel is the dominant telecommunications company in Nigeria and provides domestic and international telecommunications services.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that the action involves a citizen of this state and a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6.      This Court has personal jurisdiction over NiTel pursuant to N.Y. Civil Practice Law and Rules Section 302.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

8.      AT&T has been the world's leading international telecommunications provider for more than 100 years.  To support these services, AT&T, by itself and through its subsidiaries, has built, operates, and manages a complex and comprehensive international long distance telecommunications network comprised of direct circuits, consisting primarily of fiber-optic cable, between the United States and over 220 countries and territories ("AT&T Network").

9.      AT&T has entered contracts called Intercontinental Telephone Service Agreements and International Telecommunications Services Agreements with approximately

250 telecommunications carriers around the world to provide direct telecommunications services between AT&T customers in the United States and the customers of the other carriers.

10.    In addition, AT&T has entered into a variety of other agreements with telecommunications carriers around the world to provide a number of different services to the international telecommunications marketplace.  Pursuant to these agreements, AT&T facilitates the termination of billions of minutes of telephone calls annually from originating telecommunications carriers in virtually every country in the world seeking to send their customers' calls to other destinations worldwide.

11.    This dispute involves international call termination and routing services provided to NiTel under three separate agreements.  The services are known as Bilateral Termination Service, Transit Service, and Hubbing Service (branded by AT&T at various times as Global Hubbing or Select Service).  AT&T is entitled to $5,047,412.25 from NiTel for providing such services, but NiTel has breached each of the three agreements by failing to pay these amounts which are long overdue.

A.    The Intercontinental Telephone Service Agreement

12.    On or about October 26, 1972, Nigerian External Telecommunications Limited, entered into an agreement with AT&T entitled "Intercontinental Telephone Service Agreement" (the "ITSA").  NiTel is the successor-in-interest to Nigerian External Telecommunications Limited under the ITSA.

13.    Pursuant to the ITSA, AT&T and NiTel established direct circuits between the United States and Nigeria to provide direct telecommunications service between Nigeria and the continental United States.  These circuits were used to terminate calls originating in Nigeria and terminating in the United States and vice versa.  The service that AT&T and NiTel provided to one another under the ITSA is known "Bilateral Termination Service."

14.    NiTel has sent millions of minutes of telecommunications call traffic originating in Nigeria to AT&T's switching facilities in New York City for which AT&T provided Bilateral Termination Service in New York City, New York State and other destinations across the United States.

15.    Section 7(a)(1) of the ITSA provides:

(1)    Each party shall render to the other a monthly account of the full amount of charges for the collection of which it is responsible, showing the portion thereof due to the other party.  Such accounts shall be forwarded to the other party as soon as practicable after the calendar month to which the account relates, but in no event later than the end of the third calendar month following the month to which the account relates.

16.    Section 7(a)(3) of the ITSA provides:

(3)    An account shall be deemed to have been accepted by the party to whom it is rendered if that party does not object in writing thereto before the end of the third calendar month immediately following the calendar month in which the account is transmitted by the party rendering it.  Objections shall be transmitted to the party which has sent the account as soon as possible after receipt of the account.  Agreed adjustments shall be included in the subsequent monthly account.

17.    Section 7(b) of the ITSA provides, in pertinent part:

The sums due each month from one accounting party to the other as covered by the rendered accounts shall be reduced to a net balance by each party.  Net balances due from one party to the other shall be paid in United States currency by the debtor party to the creditor party as soon as practicable on a quarterly basis, and in no event later than six weeks after the monthly account for the third month of the quarter is received.

18.    Pursuant to the ITSA, AT&T and NiTel were to engage in a netting process whereby one party would owe the other party money based upon the "net" number of minutes of telephone call traffic exchanged between the parties in both directions.

19.    During the period October 2003 through December 2004, AT&T provided Bilateral Termination Service to NiTel for telecommunications call traffic sent by NiTel to AT&T for termination in the United States.

20.    The amount due to AT&T by NiTel for Bilateral Termination Service during October 2003 through December 2004, after the netting process, is $149,855.50.

21.    AT&T has complied with its obligations under the ITSA and has demanded that NiTel make full payment for amounts owed under the ITSA.

22.    NiTel admits that it owes the full amount to AT&T, has repeatedly assured AT&T that it would pay all such amounts but, to date, has failed to make payment in breach of the ITSA.

23.    As a result, AT&T has suffered, and continues to suffer, loss of revenue and other damages directly and proximately caused by NiTel's failure to pay for Bilateral Termination Services.

**B.    The Switched Transit Services Agreement**

24.    On or about July 4, 2000, NiTel entered into a Transit Service Terms Agreement and accompanying Confidential Transit Arrangement for Global Switched Transit (together, the "Transit Agreement"), with Concert Global Network Services, Ltd. (hereinafter "Concert"), to provide global-switched transit services ("Transit Service").

25.    Concert was a joint venture between AT&T and British Telecommunications plc that was dissolved effective April 1, 2002. Upon the dissolution of Concert, certain Concert assets, including the Transit Agreement, were assigned to AT&T. Accordingly, AT&T possesses all Concert's rights under the Transit Agreement, including the right to receive payment of past due amounts, and is the successor-in-interest to Concert thereunder. (Unless a distinction is necessary, hereinafter Concert and AT&T are together referred to as "AT&T.")

26.    Carriers may terminate their international telecommunications traffic indirectly, via other carriers' direct circuits with the destination country. Different economic arrangements

are made for such indirect termination of traffic. Transit Service is one such arrangement; Hubbing Service described below is another.

27.    Transit Service, sometimes called Via Service, is the more traditional arrangement for indirect termination of traffic. A transit arrangement is a three-way arrangement under which the originating and the terminating carriers each pay a "transit fee" to the intermediate, or "via carrier" that provides the Transit Service. Payment to the terminating carrier for terminating the calls in the destination country is solely the responsibility of the originating carrier pursuant to its own settlement agreement with the terminating carrier and the via carrier is simply a passive participant permitting the originating carrier to send call traffic to various destinations over the via carrier's open network.

28.    During the period at issue in this lawsuit, AT&T offered both Transit Service and Bilateral Termination Service to the telecommunications carriers with which it had entered into an International Telecommunications Service Agreement, including NiTel.

29.    By utilizing AT&T's Transit Service, NiTel was able to do the following: take advantage of AT&T's agreements for termination to countries where NiTel did not have direct circuits; and even where NiTel did have direct circuits in place, terminate calls via AT&T's Transit Service to avoid circuit congestion on its own direct connections to such countries at local peak calling times.

30.    Use of Transit Service enabled NiTel to make a profit based upon the difference between the price that NiTel charged its customers and the prices charged by terminating carriers pursuant to NiTel's settlement agreements with the terminating carrier, less the transit fee owed to AT&T, and by avoiding the costs of building and maintaining direct circuits with all other carriers.

31.     For each minute of Transit Service provided by AT&T to NiTel, NiTel agreed to pay AT&T a per minute fee as provided by the terms of the Transit Agreement, which was included as a factor in the netting under the ITSA between the parties.

32.     For the period January 1, 2001 through December 31, 2001, AT&T provided Transit Service to NiTel valued at $1,266,498.81.  Through the netting process of amounts AT&T owed to NiTel as agreed under the Transit Agreement and the ITSA, AT&T has credited $687,325.20 to the amount NiTel owes under the Transit Agreement, leaving an amount due and owing by NiTel to AT&T of $579,143.61.

33.     NiTel admits and acknowledges that it owes all amounts AT&T alleges under the Transit Agreement and has repeatedly assured AT&T that it will make full payment of all amounts owed.

34.     NiTel breached the Transit Agreement by failing to pay AT&T such overdue amounts due and owing.

35.     Thus, AT&T has suffered, and continues to suffer, substantial loss of revenue and other damages directly and proximately caused by NiTel's failure to pay AT&T for Transit Service provided to NiTel by AT&T under the Transit Agreement.

C.     **The Select Service Terms Attachment and Select Pricing Schedule**

36.     Hubbing Service is another means to provide indirect traffic termination service, in which the originating carrier contracts with a second carrier to terminate its traffic to third countries for a price.

37.     On or about January 25, 2001, NiTel entered into an agreement with Concert called the "Concert Select Service Terms Attachment" and an accompanying "Concert Select Pricing Schedule" (together, the "Select Agreement"), under which Concert agreed to provide, and NiTel agreed to purchase, Hubbing Services.

38.    Pursuant to the Select Agreement, Concert, and thereafter AT&T, provided NiTel with Hubbing Service, which was marketed initially as Concert Select Service and now as AT&T Global Hubbing Service.

39.    Upon the dissolution of Concert, effective April 1, 2002, certain Concert assets, including the Select Agreement, were assigned to AT&T. Accordingly, AT&T possesses all Concert's rights under the Select Agreement and is the successor-in-interest to Concert thereunder.

40.    NiTel, as part of its business as a telecommunications carrier in Nigeria, collects money from its customers in Nigeria for agreeing to terminate their calls dialed to various destinations worldwide.

41.    Hubbing Service is a service provided and sold by AT&T to NiTel under the Select Agreement, in which voice call traffic originated by NiTel was routed to AT&T's switch in New York City for termination to third countries (meaning countries other than the United States or Nigeria), based on agreements between AT&T and telecommunications carriers around the world. NiTel used Hubbing Service as one means to terminate its customers' international calls.

42.    By purchasing Hubbing Service from AT&T, NiTel was able to do the following: take advantage of AT&T's agreements for termination to countries where NiTel did not have any agreements with the national carrier for termination of its customers' calls; even where NiTel did have such agreements in place, terminate calls via AT&T's service to avoid circuit congestion on its own direct connections to such countries at local peak calling times; and take advantage of AT&T's termination rates whenever such rates were less expensive than those NiTel had been able to negotiate under its own agreements with carriers in the same countries.

43.    Use of Hubbing Service thus enabled NiTel to make a profit based upon the difference between the price that NiTel charged its customers and the prices charged by AT&T to NiTel for Hubbing Service, and by avoiding the costs of building and maintaining direct circuits with all other carriers.

44.    Pursuant to the Select Agreement, NiTel agreed to pay AT&T per minute rates for Hubbing Service.

45.    For the period April 2004 through December 2005, AT&T provided Hubbing Service to NiTel valued at $4,318, 413.14 based upon the rates agreed upon by AT&T and NiTel.

46.    AT&T has demanded payment of this amount, NiTel has admitted that it owes this amount in full, has repeatedly promised to pay AT&T such amounts but, to date, has failed to do so.

47.    Thus, AT&T has suffered, and continues to suffer, substantial loss of revenue and other damages directly and proximately caused by NiTel's failure to pay for Hubbing Service in violation of the Select Agreement.

FIRST CAUSE OF ACTION:
Breach of Contract

48.    Plaintiff repeats and realleges paragraphs 1 through 23 as if fully set forth herein.

49.    The ITSA is a valid and binding contract between AT&T and NiTel.  AT&T has substantially performed all of its obligations under the ITSA.  NiTel has breached the ITSA by failing to pay $149,855.50 which amount is due and owing to AT&T under the ITSA.

50.    AT&T has suffered, and continues to suffer, substantial damages as a direct and proximate result of NiTel's breach of the ITSA.

SECOND CAUSE OF ACTION:
Breach of Contract

51.    Plaintiff repeats and realleges paragraphs 1 through 11 and 24 through 35 as if fully set forth herein.

52.    The Transit Agreement is a valid and binding contract between AT&T and NiTel. AT&T has substantially performed all of its obligations under the Transit Agreement. NiTel has breached the Transit Agreement by failing to pay $579,143.61 which amount is due and owing to AT&T under the Transit Agreement.

53.    AT&T has suffered, and continues to suffer, substantial damages as a direct and proximate result of NiTel's breach of the Transit Agreement.

THIRD CAUSE OF ACTION:
Breach of Contract

54.    Plaintiff repeats and realleges paragraphs 1 through 11 and 36 through 47 as if fully set forth herein.

55.    The Select Agreement is a valid and binding contract between AT&T and NiTel. AT&T has substantially performed all of its obligations under the Select Agreement. NiTel has breached the Select Agreement by failing to pay $4,318,413.14 which amount is due and owing to AT&T under the Select Agreement.

56.    AT&T has suffered, and continues to suffer, substantial damages as a direct and proximate result of NiTel's breach of the Select Agreement.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff AT&T prays that the Court enter judgment for AT&T against Defendant NiTel:

(a)    On the first cause of action, awarding AT&T compensatory damages for breach of the ITSA in the amount of at least $149,855.50 or such additional amount as may be proved at trial;

(b)     On the second cause of action, awarding AT&T compensatory damages for breach of the Transit Agreement in the amount of at least $579,143.61 or such additional amount as may be proved at trial;

(c)     On the third cause of action, awarding AT&T compensatory damages for breach of the Select Agreement in the amount of at least $4,318,413.14 or such additional amount as may be proved at trial;

(d)     Awarding AT&T pre- and post-judgment interest on the amounts set forth above;

(e)     Awarding AT&T its costs, attorneys' fees, and such other relief as the Court may deem just and proper.

Dated: July 20, 2007
       New York, New York

FULBRIGHT & JAWORSKI L.L.P.

By:     _____

Henry G. Burnett (HB-3273)
Sarah E. O'Connell (SO 0928)
666 Fifth Avenue, 31st Floor
New York, New York  10103
Telephone:    (212) 318-3000
Fax:          (212) 318-3400
E-mail:       hburnett@fulbright.com
              soconnell@fulbright.com

-and-

Of Counsel:

Suzanne L. Montgomery, Esq.
One AT&T Way, Room 3A219
Bedminster, New Jersey 07921
Telephone:    (908) 234-5695
Fax.:         (832) 213-0359
E-mail:       sm6526@att.com

*Attorneys for Plaintiff AT&T Corp.*

CERTIFIED AS A TRUE COPY ON

THIS DATE  JUL 3 1 2007

By _____
       ( ) Clerk
       (x) Deputy

31259547.1

-11-

# EXHIBIT 2

Henry G. Burnett (HB 3273)
Sarah O'Connell (SO 0928)
Fulbright & Jaworski L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400

*Attorneys for Plaintiff AT&T Corp.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AT&T CORP.,

                    *Plaintiff,*

       -against-

NIGERIAN TELECOMMUNICATIONS
Plc,

                   *Defendant.*

--------------------------------------------------------------x

Civil Action No. 07-CV-6544 (    )

ORDER TO APPOINT SPECIAL
PROCESS SERVICE

      IT IS HEREBY ORDERED, that APS International, Ltd., including its designated agents, is appointed and authorized to effect service of process on the defendant, Nigerian Telecommunications Plc, in Nigeria. Service shall be effected according to any internationally agreed means, the laws of the foreign country, or as directed by the foreign authority or the originating court if not otherwise prohibited by international agreement or the laws of the foreign country, and in a manner reasonably calculated to give notice.

Dated: 9/10/07

_____
Hon. Lewis A. Kaplan, U.S.D.J.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/12/07

# EXHIBIT 3

AT&T Corp., et. al., Plaintiff(s)
vs.
Nigerian Telecommunications, Plc, et. al., Defendant(s)



APS International, Ltd.
1-800-328-7171
CivilActionGroup.com

APS File: 250409-1

Law Firm Requesting Service:
FULBRIGHT & JAWORSKI
Ms. Sarah E. O'Connell
666 Fifth Ave., 31st Floor
New York, NY 10103-3198

*AFFIDAVIT OF SERVICE ON A CORPORATION*

--Nigerian Telecommunications Plc
Court Case No. '07 CIV 6544

| | |
|---|---|
| **Name of Server:** | **Emmanuel Atam** , undersigned, being duly sworn, deposes and says that at the time of service, s/he was over the age of twenty-one, was not a party to this action; |
| **Date/Time of Service** | that on  02-Oct-2007 01:10 pm |
| **Place of Service:** | Plot 251, Herbert Macaulay Way, Central Business District, Abuja, Nigeria |
| **Documents Served:** | the undersigned served the documents described as: Summons in a Civil Action, Complaint, Civil Cover Sheet. Lewis A. Kaplan, U.S.D.J., packet, Individual Practices of Magistrate Judge Andrew J. Peck |
| **Service of Process on, Person Served, and Method of Service:** | A true and correct copy of the aforesaid document(s) was served on: **Nigerian Telecommunications Plc** By delivering them into the hands of an officer, managing agent, or other person authorized to accept service of process, whose name and title is **Abah Samuel, Secretary** |
| **Other Information:** | The documents were served at the company Legal Department through the Secretary. Process was served pursuant to Order 12 Rule 24, High Court of the Federal Capital Territory, Abuja (Civil Procedure) Rules. |
| **Description of Person Receiving Documents:** | The person receiving documents is described as follows: Sex  M ; Skin Color_____ : Hair Color_____ ; Facial Hair_____ Approx. Age_____ ; Approx. Height_____ ; Approx. Weight_____ ☑ To the best of my knowledge and belief, said person was not engaged in the US Military at the time of service. |
| **Signature of Server:** | Undersigned declares under penalty of perjury that the foregoing is true and correct. _____ Signature of Server |

Subscribed and sworn to before me this
19TH day of OCTOBER , 200 7
_____
Notary Public        (Commission Expires)

APS International, Ltd.
APS International Plaza · 7800 Glenroy Rd.
Minneapolis, MN 55439-3122

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
AT&T CORP.,                                     :
                                                :
                              *Plaintiff,*      :        07 CV 6544 (LAK)
                                                :
            -against-                           :        **CLERK'S CERTIFICATE**
                                                :
NIGERIAN TELECOMMUNICATIONS,                    :
PLC,                                            :
                                                :
                              *Defendant.*      :
--------------------------------------------------------- x

    I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on July 20, 2007 with the filing of a summons and complaint, that APS International Ltd. was appointed special process service to effect service on defendant Nigerian Telecommunications, PLC ("NiTel"), that a copy of the summons and complaint was served on defendant Nigerian Telecommunications, PLC ("NiTel") by delivering a copy to Abah Samuel, Secretary of NiTel at the offices of NiTel located at Plot 251, Herbert Macaulay Way, Central Business District, Abuja, Nigeria on October 2, 2007, and proof of service was filed with the Court on November 1, 2007.

    I further certify that the docket entries indicate that NiTel has not filed an answer or otherwise moved with respect to the Complaint herein. The default of the Defendant is hereby noted.

Dated: New York, New York

_1/16/08_

              J. MICHAEL MCMAHON
              Clerk of the Court

              By: _____
                    Deputy Clerk

65120341.1                              -4-